UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LOUISIANA ENVIRONMENTAL ACTION NETWORK AND STEPHANIE ANTHONY, | ) ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) |
| EXXON MOBIL CORP. d/b/a/ EXXONMOBIL CHEMICAL CO. | ) ) ) |
| *Defendant*. | ) ) |

# COMPLAINT

For their complaint, Plaintiffs Louisiana Environment Action Network and Stephanie Anthony make the following allegations against the Defendant Exxon Mobil Corporation.

## INTRODUCTION

1. This is a citizen enforcement suit concerning Exxon Mobil Corporation's continued violation of Clean Air Act regulations designed to protect human health and the environment. The case concerns violations at Exxon's Baton Rouge Chemical Plant, which is adjacent to a predominantly African American and lower income residential area in Baton Rouge, Louisiana.

2. Exxon emits thousands of pounds of harmful and hazardous air pollutants above permitted limits. These pollutants include, but are not limited to, dangerous and carcinogenic chemicals and gases such as benzene, toluene, propylene, ethylene, sulfur dioxide, nitrogen oxide, 1,3-butadiene, hexane, methylene chloride, and other volatile organic compounds that are precursors to dangerous ground-level ozone.

3. Exxon's violations continue despite a 2013 administrative settlement with the Louisiana Department of Environmental Quality ("LDEQ") and continue after Plaintiffs sent a

Supplemental Notice of Violations on January 30, 2015.

4. When violations occur, Exxon often fails to lawfully notify LDEQ about the violations because Exxon's reports usually lack enough detail to comply with regulations and provide residents useful information about their potential exposures to dangerous pollution.

## JURISDICTION, VENUE, AND NOTICE

5. This Court has original subject matter jurisdiction over this case under the Clean Air Act's citizen suit provision, 42 U.S.C. § 7604(a), federal question jurisdiction, 28 U.S.C. § 1331, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

6. Venue lies in this District pursuant to the Clean Air Act, 42 U.S.C. § 7604(c)(1), because Exxon's Baton Rouge Chemical Plant is a stationary source located within this District at 4999 Scenic Highway, Baton Rouge, Louisiana.

7. Pursuant to the Clean Air Act's citizen-suit provision, 42 U.S.C. § 7604(b), Plaintiffs gave notice of the violations alleged in this Complaint in a letter sent by certified U.S. Mail on April 22, 2013, more than 60 days prior to the commencement of this action. Plaintiffs sent their notice to Exxon, the EPA, and the State of Louisiana. Plaintiffs attach and incorporate by reference a copy of this notice as Exhibit A to this Complaint. Plaintiffs sent a supplemented notice letter to the same parties by U.S. Mail on January 30, 2015. Plaintiffs attach and incorporate by reference this supplemental notice as Exhibit B to this Complaint.

8. The plaintiff's 4/22/13 notice and 1/30/15 supplement meet all of the requirements of 42 U.S.C. § 7604(b) and sufficiently put Exxon on notice of the allegations in this Complaint.

9. This citizen suit is not precluded by government action. Neither EPA nor the State of Louisiana is diligently prosecuting a civil or criminal action in a court of the United States to redress Exxon's continuing violations of the Clean Air Act.

10. Exxon's plant continues to violate the Clean Air Act and, upon information and belief, these violations will continue until enjoined by this Court.

## PARTIES

*Plaintiffs*

11. Plaintiff LEAN is a nonprofit community corporation organized under the laws of the State of Louisiana, falling within the meaning of "person" under 42 U.S.C. § 7602(e). LEAN's mission is to foster cooperation and communication between individual citizens and corporate and government organizations in an effort to assess and mend the environmental problems in Louisiana. LEAN's goal is the creation and maintenance of a cleaner and healthier environment for all of the inhabitants of Louisiana. LEAN provides its member groups, as well as individual citizens, with the support and resources required to accomplish their environmental goals. LEAN's office is in Baton Rouge, Louisiana.

12. Plaintiff Stephanie Anthony is an individual who lives, works, and recreates near Baton Rouge and Exxon's chemical plant. Ms. Anthony is a long-time resident of Baton Rouge and lives approximately ten miles from Exxon's chemical plant. Ms. Anthony is concerned about the health, safety, and negative environmental impacts associated with Exxon's violations. Ms. Anthony is also a member of LEAN.

13. Ms. Anthony and other LEAN members, are injured by Exxon's unpermitted emission of 1,3 butadiene, benzene, propylene, ethylene, and other air pollutants Exxon emits in violation of the Clean Air Act.

14. Exxon's violations pose risks to public health and the environment in areas where Ms. Anthony and other LEAN members, work, and recreate.

15. Exposure to Exxon's illegal emissions interferes with Ms. Anthony and other LEAN members' ability to enjoy life in their community. Odors from Exxon's illegal emissions

aggravate these Louisiana residents and, at times, deter and prevent them from engaging in activities they might otherwise pursue and enjoy.

16. Ms. Anthony, LEAN, and LEAN's members are injured by Exxon's reporting violations because these violations 1) deny them information that would help them more effectively participate in the regulatory and enforcement process concerning Exxon's Chemical Plant, and 2) deny LDEQ information it needs to more effectively protect Ms. Anthony and other LEAN members' health and welfare from risks posed by Exxon's emissions. Ms. Anthony and other LEAN members are concerned about potential health risks from inhaling harmful pollutants released by Exxon and are entitled to be fully informed of the risks they face by living, working, and recreating near the Chemical Plant. Exxon's failure to properly report unauthorized discharges exacerbates these concerns because Plaintiffs do not know how much harmful pollution they are exposed to as a result of Exxon's emissions. Further, one purpose of the Clean Air Act is to facilitate public participation in environmental decisions, including enforcement and settlement decisions. *See, e.g.*, 42 U.S.C. §§ 7470(5), 7413(g), 7607(h).

17. Plaintiffs are entitled to relief from Exxon's ongoing violations at the Chemical Plant. Plaintiffs and other members of the Baton Rouge community suffered, are suffering, and will continue to suffer injury from Exxon's violations. These injuries are actual, concrete, irreparable, and traceable to Exxon, and the relief sought in this action would redress the injuries.

*Defendant*

18. ExxonMobil Corporation is domiciled at 830 Bear Tavern Road, West Trenton, New Jersey 08628, with its principal offices at 5959 Las Colinas Blvd., Irving, Texas 75039.

19. Exxon is a corporation and, therefore, a "person" under 42 U.S.C. § 7602(e).

20. At all times relevant to this lawsuit, Exxon has owned and operated the Baton Rouge Chemical Plant located at 4999 Scenic Highway, Baton Rouge, Louisiana. Exxon still

owns and operates the Chemical Plant.

## RISK TO PUBLIC HEALTH AND THE ENVIRONMENT

21.     Exxon releases harmful pollutants from the Chemical Plant that threaten public health and welfare.

22.     Volatile organic compounds ("VOCs") react in the atmosphere with oxygen and sunlight to form harmful ground-level ozone. Ozone can cause airway irritation, coughing, breathing difficulties, aggravation of asthma, and increased susceptibility to respiratory illnesses like pneumonia and bronchitis, as well as permanent lung damage. The Baton Rouge area fails to comply with current health-protection ambient standard for ozone pollution (amended in 2015, 80 Fed. Reg. 65,292 (Oct. 26, 2015).

23.     Oxides of nitrogen react in the atmosphere with oxygen and sunlight to form ozone.

24.     Toxic air pollutants, such as benzene, are known to cause cancer and other neurological, reproductive, developmental, and respiratory problems.

25.     Exxon's emissions contribute to the harmful air quality near the Chemical Plant and elsewhere in the surrounding area.

26.     Upon information and belief, without issuance of injunctive relief and the assessment of civil penalties, Exxon will continue to release harmful pollutants into the atmosphere in violation of the Clean Air Act, further injuring Plaintiffs and the environment.

27.     Injunctive relief and civil penalties are necessary to deter Exxon from further violating emission permits.

STATUTORY AND REGULATORY BACKGROUND

*Federal Statutes and Regulations*

28. Congress enacted the Clean Air Act "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare." 42 U.S.C. § 7401(b)(1).

29. The Clean Air Act directs EPA to establish National Ambient Air Quality Standards ("NAAQS") for pollutants considered harmful to public health and the environment. *Id.* § 7409; 40 C.F.R. § 50. The EPA set ambient air quality standards for six criteria pollutants: carbon monoxide, nitrogen dioxide, ozone, particle pollution, and sulfur dioxide. 40 C.F.R. § 50.

30. The Clean Air Act also established National Emission Standards for Hazardous Air Pollutants ("NESHAPs"), which are known or expected to cause cancer or other serious health effects. *Id.* § 63. The EPA regulates more than 190 hazardous air pollutants, including benzene, 1,3 butadiene, hexane, and propylene. *Id.* §§ 61, 63.

31. Under the Clean Air Act, states promulgate state implementation plans that meet minimum federal requirements. 42 U.S.C. § 7410(a). These plans must include plans for implementation, maintenance, and enforcement of primary and secondary air quality standards, *Id.* § 7410(a)(1), as well as "enforceable emission limitations and other control measures, means, or techniques [and] schedules and timetables for compliance . . . ." *Id.* § 7410(a)(2)(A). Upon EPA approval, a state implementation plan becomes federally enforceable. *Id.* § 7413.

32. EPA approved Louisiana's implementation plan. 40 C.F.R. § 52.970.

33. Louisiana's implementation plan applies to any source of emission existing partially or wholly within the State of Louisiana. LA. ADMIN. CODE tit. 33, **pt. III**, § 103.A. Major sources, as defined in LA. ADMIN. CODE tit. 33, **pt. III**, § 502.A.k, must obtain air permits that meet the requirements of Louisiana's Part 70 operating permit program. *Id.* § 507.A.1. Part 70 permits include both state and federal requirements. *Id.* § 507.B.2.

6

34. Louisiana's implementation plan mandates that "[t]he Part 70 source shall be operated in compliance with all terms and conditions of the permit." *Id.* "Noncompliance with any federally applicable term or condition of the permit shall constitute a violation of the Clean Air Act and shall be grounds for enforcement action . . . ." *Id.*

*Clean Air Act Citizen Suit Provision*

35. The Clean Air Act includes a citizen enforcement provision authorizing citizens to bring a civil action "against any person . . . who is alleged to have violated . . . or to be in violation of any condition of . . . an emission standard or limitation [or] an order issued by the Administrator or a State with respect to such a standard or limitation." 42 U.S.C. § 7604(a)(1).

*36.* Under this citizen suit provision, courts may apply appropriate civil penalties, payable to the United States Treasury, *Id.* § 7604(a), (g)(1), or to "be used in beneficial mitigation projects which . . . enhance the public health or the environment." *Id.* § 7604(g)(2).

*Defendant's Part 70 Permits*

37. Federal regulations mandate that each Part 70 permit contain a provision stating that "[a]ny permit noncompliance constitutes a violation of the Act and is therefore grounds for enforcement action . . . ." 40 C.F.R. § 70.6(a)(6)(i). According to these regulations, "[a]ll terms and conditions in a part 70 permit, including any provisions designed to limit a source's potential to emit, are enforceable by the Administrator and citizens under the Act." *Id.* § 70.6(b)(1).

38. Federal regulations also mandate that Part 70 permits require "prompt reporting of deviations from permit requirements, including those attributable to upset conditions as defined in the permit, the probable cause of such deviations, and any corrective actions or preventive measures taken." *Id.* § 70.6(a)(3)(iii)(B). Pursuant to this mandate, Louisiana's SIP stipulates that "[t]he unauthorized discharge of any air pollutant into the atmosphere shall be reported in accordance with the provisions of LAC 33:I.Chapter 39, Notification Regulations and

Procedures for Unauthorized Discharges" to LDEQ. LA. ADMIN. CODE tit. 33, pt. III, § 927.A. Chapter 39 of title 33 subsection I of Louisiana's Administrative Code provides specific reporting criteria for unauthorized discharges. LA ADMIN. CODE tit. 33, pt. I, § 3925.

39. The LDEQ issued multiple permits to Exxon, including permits numbered: 2013-V10, 1924-V5, 2361-V3, 2166-V6, 2123-V1, 3006-V3, 2281-V4, 2299-V7, 2396-V2, 2365-V4, 1200-V4, 2012-V3, 2031-V9, 2390-V3, 1911-V3, 2376-V4, 2379-V1, 2393-V3, and 2367-V2.

40. These permits incorporate federal and state air quality requirements including numerical emission limits for sulfur dioxide, 1,3 butadiene, benzene, and a variety of VOCs. Many of these permits apply to a single unit within the Chemical Plant and regulate emissions for that unit alone.

## FIRST CAUSE OF ACTION

(*Violations of Emission Limits*)

41. Exxon violates the Clean Air Act in the course of operating the Chemical Plant because it repeatedly discharges air contaminants in violation of its permits.

42. Since March 3, 2011, Exxon violated the Clean Air Act at least 120 times. The table attached to this Complaint as Exhibit C, which Plaintiffs incorporate by reference, provides an illustrative list of such emissions violations. The Plaintiffs compiled the information contained in this table from reports that Exxon submitted to LDEQ. The table is offered by way of illustration and no limitation.

43. Each discharge of a pollutant at the Chemical Plant that violates a permitted emission limit is a separate violation of the Clean Air Act.

44. Each discharge of a pollutant at the Chemical Plant after March 3, 2011, that is not covered by an applicable LDEQ issued permit is a separate violation of the Clean Air Act.

SECOND CAUSE OF ACTION

*(Violations of Notification Requirements for Deviations)*

45. Exxon violates the Clean Air Act in the course of operating the Chemical Plant by failing to properly report release incidents.

46. Exxon repeatedly submits Unauthorized Discharge Notification Reports that do not contain information required by EPA and LDEQ regulations. Each inadequate report after March 3, 2011, is a separate violation of the Clean Air Act.

47. Exxon fails to provide the permit number associated with the discharging equipment on its Unauthorized Discharge Notification Reports. For example, on January 15, 2015, Exxon Chemical Plant submitted an Unauthorized Discharge Notice Report after releasing 10,043 lbs.[1] of Hydrogen Chloride (HCl), which forms Hydrochloric Acid. Exxon's report states that its RLA-1 unit experienced an unplanned flaring event in the Hexane Rectifier tower's safety valve, which vented to the flare system to reduce tower pressure. Exxon's report states that there is no applicable permit associated with this emission. However, Exxon's Title V Operating Permit for the Halobutyl Production Facility, Permit No. 2166-V5, permits the "co-polymerization unit referred to as RLA-1."[2] Additionally, Permit No. 2166-V5 places limitations on Hydrochloric Acid pollution.[3]

48. Exxon fails to provide additional information mandated by the EPA and LDEQ in its Unauthorized Discharge Notification Reports. For example and without limitation, Exxon's Discharge Notification Reports do not include a means to report the following required information: whether the Unauthorized Discharge Report is a follow-up report, the duration of

---

[1] Unauthorized Discharge Notification Report, ExxonMobil Chemical Company (EDMS Doc ID 9627224) (La. Dept. of Envtl. Quality Jan. 15, 2015).
[2] Part 70 Operating Permit Modification, Halobutyl Production Facility, ExxonMobil Chemical Company Permit No. 2166-V5 at 1 (EDMS Doc ID 8948804) (La. Dept. of Envtl. Quality Aug. 5, 2013).
[3] *Id.* at 3.

9

the discharge, whether the discharge is corrected and, if not, the anticipated time the discharge will continue, permit limits for the discharged chemical, and whether the incident resulted in injuries. LA ADMIN. CODE tit. 33 pt. I § 3925. These Reporting requirements are incorporated in Louisiana's State Implementation Plan. *See* 40 C.F.R. § 970; LA ADMIN. CODE tit. 33 pt. III § 927. Therefore, every Unauthorized Discharge Notification Report is a violation of the Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

    A.    Declare that Exxon is in violation of the Clean Air Act for violations of permitted emissions limits and mandatory reporting requirements;

    B.    Permanently enjoin Exxon from operating the Baton Rouge Chemical Plant, except within applicable permit limits and in accordance with the Clean Air Act;

    C.    Assess civil penalties to the United States Treasury in the amount of $37,500 per violation per day for each of Exxon's Clean Air Act violations after March 3, 2011, as provided by sections 113(b) & (e) and 304(a) of the Clean Air Act, 42 U.S.C. § 7413(b) & (e) and 7604(a), the Federal Civil Penalties Inflation Adjustment Act, 28 U.S.C. § 2461, and 40 C.F.R. § 19.4;

    D.    Apply $100,000 of the civil penalties towards beneficial mitigation projects within the community, as provided by 42 U.S.C. § 7604(g)(2);

    E.    Order Exxon to pay reasonable litigation costs including attorneys' fees, expert witness' fees, and other such costs as this Court deems just and proper as provided by 42 U.S.C. § 7604(d);

    F.    Grant other relief such as this Court deems proper.

Respectfully submitted on March 3, 2016,

TULANE ENVIRONMENTAL LAW CLINIC

/s/ Amanda Serfess
Amanda Serfess, Student Attorney
*Counsel for Plaintiff Louisiana Environmental Action Network*


/s/ Adam Babich
Adam Babich (La. Bar No. 27177)
Tulane Environmental Law Clinic
6329 Freret Street, Room 130
New Orleans, Louisiana 70118
Phone: (504) 862-8814
Fax: (504) 862-8721

*Counsel for Plaintiffs Louisiana Environmental Action Network & Stephanie Anthony*

## SUPERVISING ATTORNEY'S INTRODUCTION OF STUDENT PRACTITIONER

Undersigned counsel respectfully introduces law student practitioner Amanda Serfess to this Court pursuant to Local Rule 83(15). This student practitioner is duly enrolled in Tulane Law School and the Tulane Environmental Law Clinic. She meets all of the prerequisites for a Law Student Appearance under Local Rule 83(15)(D). Her client's written consent to student appearances is attached as Exhibit D to this Complaint pursuant to Local Rule 83(15)(B). The Tulane Law School Dean's certification that the student practitioner is of good moral character, competent legal ability, and adequately trained to perform as a legal intern is attached as Exhibit E to this Complaint pursuant to Local Rule 83(15)(E).

Respectfully submitted on March 3, 2016,

TULANE ENVIRONEMNTAL LAW CLINIC

/s/ Adam Babich
Adam Babich, Professor, Tulane Law School

Respectfully submitted on March 3, 2016,

TULANE ENVIRONMENTAL LAW CLINIC

/s/ Amanda Serfess
Amanda Serfess, Student Attorney
*Counsel for Plaintiff Louisiana Environmental Action Network*


/s/ Adam Babich
Adam Babich (La. Bar No. 27177)
Tulane Environmental Law Clinic
6329 Freret Street, Room 130
New Orleans, Louisiana 70118
Phone: (504) 862-8814
Fax: (504) 862-8721

*Counsel for Plaintiffs Louisiana Environmental Action Network & Stephanie Anthony*

## SUPERVISING ATTORNEY'S INTRODUCTION OF STUDENT PRACTITIONER

Undersigned counsel respectfully introduces law student practitioner Amanda Serfess to this Court pursuant to Local Rule 83(15). This student practitioner is duly enrolled in Tulane Law School and the Tulane Environmental Law Clinic. She meets all of the prerequisites for a Law Student Appearance under Local Rule 83(15)(D). Her client's written consent to student appearances is attached as Exhibit D to this Complaint pursuant to Local Rule 83(15)(B). The Tulane Law School Dean's certification that the student practitioner is of good moral character, competent legal ability, and adequately trained to perform as a legal intern is attached as Exhibit E to this Complaint pursuant to Local Rule 83(15)(E).

Respectfully submitted on March 3, 2016,

TULANE ENVIRONEMNTAL LAW CLINIC

/s/ Adam Babich
Adam Babich, Professor, Tulane Law School