UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LOUISIANA ENVIRONMENTAL                 CIVIL ACTION
ACTION NETWORK AND
STEPHANIE ANTHONY

VERSUS                                                                       16-144-SDD-RLB

EXXON MOBIL CORP. d/b/a
EXXONMOBIL CHEMICAL CO.

## RULING

This matter is before the Court on the *Motion for Summary Judgment on Standing*[1] filed by Plaintiffs, Louisiana Environmental Action Network ("LEAN") and Stephanie Anthony ("Anthony") or ("Plaintiffs"). Defendant Exxon Mobil Corp. d/b/a ExxonMobil Chemical Co. ("Defendant" or "ExxonMobil") has filed an *Opposition*[2] to which Plaintiffs filed a *Reply*.[3] For the following reasons, the Court finds that there are genuine issues of material fact present in this case which preclude summary judgment on standing.

**I.    FACTUAL BACKGROUND**

Plaintiffs filed this lawsuit claiming the Defendant violated the Clean Air Act ("CAA") by emitting air pollutants in violation of its permit and by failing to report unauthorized discharges in accordance with applicable regulations.[4] Plaintiffs bring this suit pursuant

---

[1] Rec. Doc. No. 43.
[2] Rec. Doc. No. 49.
[3] Rec. Doc. No. 68.
[4] Rec. Doc. No. 1, ¶¶ 41-48.
39665

to the Clean Air Act's citizen suit provision.[5] The Defendant has operated a chemical manufacturing facility in Baton Rouge, Louisiana since the 1940s. In addition to other environmental statutes, this facility is regulated by the CAA. The Louisiana Department of Environmental Quality ("LDEQ") has issued to the facility several operating permits pursuant to Louisiana's Part 70 permitting program which implements Title V of the CAA.

Between 2008 and 2013, the LDEQ issued Consolidated Compliance Orders and Notices of Potential Penalties and initiated administrative enforcement proceedings pursuant to the Louisiana Environmental Quality Act ("LEQA") against Defendant based on alleged violations of federal and state environmental statutes, regulations, and permits at Defendant's facility, including the CAA and LEQA permits issued. On December 31, 2013, the Defendant and the LDEQ entered into a $2.3 million Settlement Agreement and Stipulated Penalty Agreement ("Settlement Agreement")[6] which resolved the orders and established stipulated penalties for future violations occurring on or after January 1, 2013. Defendant contends the alleged violations in this action are subject to the terms of this Settlement Agreement. Defendant points specifically to the following provisions:

> Respondent, in addition to the payment of civil penalties, performance of injunctive relief (i.e. SPCC projects), and implementation of the beneficial environmental projects (BEPs) required by this agreement, agrees that for any violation(s) occurring on or after January 1, 2013, and which are not resolved through this Settlement Agreement, such violations shall be subject to and resolved pursuant to the terms and conditions of the "LDEQ and ExxonMobil Stipulated Penalty Agreement" (Attachment O).[7]
>
> * * *
>
> For failure to conduct routine testing, monitoring, and/or sampling per site per equipment per analyzer: $100 per specified period beyond the scheduled testing or monitoring date, but may not exceed $1,000 per event.

---

[5] 42 U.S.C. § 7604(a)(1).
[6] Rec. Doc. Nos. 49-1, 49-2, 49-3, & 49-4.
[7] Rec. Doc. No. 49-1, p. 50.
39665

> For failure to submit test results within the required time frame specified in the applicable Title V permit and/or the applicable federal/state regulations: $100 per test result submitted beyond the required time frame.
>
> For failure to include all required information on testing and/or monitoring records: $100 per item omitted.[8]

Plaintiffs filed this suit on March 3, 2016, under the citizen suit provision of the CAA asserting two causes of action: (1) the Facility emitted air pollutants in excess of permitted limits; and (2) the Defendant submitted unauthorized discharge reports ("UAD"s) that did not contain all of the information required by Louisiana law. The Court has previously dismissed Plaintiff's second cause of action.[9]

Plaintiffs now move for summary judgment on the issue of standing to bring their citizen suit under the CAA. Defendant opposes the motion, arguing that there are genuine issues of material fact that preclude summary judgment on standing at this time.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[11] A party moving for summary judgment "must 'demonstrate the absence

---

[8] Rec. Doc. No. 49-4, p. 50; Attachment O, p. 11 of 17.
[9] *See* Rec. Doc. No. 52. Plaintiffs have moved for reconsideration of this *Ruling*, Rec. Doc. No. 72, which is pending before the Court.
[10] Fed. R. Civ. P. 56(a).
[11] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
39665

of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[12] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[13] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[14]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[15] All reasonable factual inferences are drawn in favor of the nonmoving party.[16] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[17] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[18]

---

[12] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[13] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[14] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[15] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[16] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[17] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[18] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).

39665

**B. Standing**

The Clean Air Act's citizen suit provision authorizes "any person" to "commence a civil action on his own behalf against any person ... who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emissions standard or limitation under this chapter... ."[19] Congress defined the term "person" to include corporations, partnerships and associations.[20] Further, nonprofit corporations may invoke the Clean Air Act's citizen suit provision.[21]

As a threshold matter, the Court must determine whether Plaintiffs have constitutional standing to bring this suit.[22] The requirement that a party have standing flows from the Article III requirement that there be a "case or controversy."[23] Standing analysis focuses on whether "a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy."[24] To prevail on a summary judgment motion, the plaintiff may not rest on mere allegations to support standing, but it instead must produce affidavits or other evidence to prove that standing exists.[25]

Here, LEAN seeks to represent the interests of its members. Such an organization "has standing to bring a suit on behalf of its members if: (1) its members would have standing to sue in their own right; (2) the interests its [sic] seeks to protect are germane to its purpose as an association; and (3) neither the claim it asserts, nor the relief it

---

[19] 42 U.S.C. § 7604(a).
[20] *See* 42 U.S.C. § 7602(e).
[21] *See, e.g., Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000); *St. Bernard Citizens for Environ. Quality, Inc. v. Chalmette Refining, L.L.C.*, 354 F.Supp.2d 697, 700 (E.D. La. 2005).
[22] *See Texans United*, 207 F.3d at 792.
[23] U.S. Const. art. III, § 2, cl. 1.
[24] *Sierra Club v. Morton*, 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).
[25] *See Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 115 n. 31, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979).
39665

requests, requires the participation of individual members."[26]  The Court turns to whether LEAN members would have standing to sue in their own right.

1. Injury-in-Fact

Defendant contends Plaintiffs cannot satisfy the injury-in-fact element without the aid of expert testimony.  However, Defendant cites no jurisprudence enforcing such a requirement, and other Louisiana federal courts have found standing in environmental cases such as this on the basis of affidavits and declarations without the aid of expert testimony.  For example, in *Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, the affidavits submitted by members of the plaintiff-organization alleged injuries in general terms, stating that their quality of life was diminished by fumes, odors, particles, etc. perceived to be emanating from the defendant's facility.[27]

The Defendant cites the Fifth Circuit's decision in *Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*[28] wherein the court held that a plaintiff environmental organization had standing based in part on expert testimony presented that emissions from the defendant's facility were present at plaintiffs' residences in detectable concentrations.[29]  However, there is no indication that the expert testimony was required to demonstrate injury for standing purposes.

Plaintiffs herein have alleged at least 120 separate incidences from 2011 to the present where Defendant exceeded its permissible emission levels and claim that

---

[26] *Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F.Supp.2d 663, 669 (E.D. La. 2010)(citing *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *Texans United*, 207 F.3d at 792).
[27] 686 F.Supp.2d at 669-670.
[28] 207 F.3d 789 (5th Cir. 2000).
[29] *Id.* at 792-93.
39665

Defendant's conduct adversely affects surrounding residents because the increased levels of contaminants released by Defendant endanger the health, safety, and enjoyment of the adjacent neighboring residents, including LEAN members.[30] LEAN member Alicia Garth, who lives seven miles from Defendant's facility, stated that she often "smell[s] obnoxious chemical odors coming from the ExxonMobil Chemical Plant that significantly impair [her] quality of life."[31] Garth further stated that these odors are "strong and offensive, smelling and even tasting like chemicals" and cause her eyes to "burn or be irritated."[32] Garth also stated that she often sees flares and hears loud noises coming from the plant which frighten her and cause her to stay inside.[33] Garth stated that she is concerned for her health and the risks associated with air pollution as she was diagnosed with cancer in 2011.[34]

Marylee Orr ("Orr"), Director and Founder of LEAN, stated that she often smells "noxious chemical odors near [her] home and office," and claims that, although she is "aware that there are several sources of air pollution in Baton Rouge, … [her] common sense and knowledge of Exxon's unauthorized discharges convinces [her] that Exxon's Chemical Plant contributes to the noxious odors" she smells.[35] Although Orr further stated that these odors reduce her pleasure of living in Baton Rouge,[36] she did not state how close she resides or works to the Defendant's facility.

Plaintiff Anthony currently lives approximately ten miles from Defendant's facility,

---

[30] Declaration of Alicia Garth, Rec. Doc. No. 43-3; Declaration of Marylee Orr, Rec. Doc. No. 51-1; Declaration of Stephanie Anthony, Rec. Doc. No. 43-5.
[31] Rec. Doc. No. 43-3, ¶ 4.
[32] *Id.*
[33] *Id.* at ¶ 6.
[34] *Id.* at ¶ 8.
[35] Rec. Doc. No. 51-1, at ¶12.
[36] *Id.*
39665

but previously lived for two years at a residence approximately seven miles from the facility.[37] Prior to these two residences, Anthony resided approximately two miles from the Defendant's facility.[38] Anthony stated that she often smells "obnoxious and nauseating chemical odors coming from the ExxonMobil Chemical Plant that significantly impair [her] quality of life."[39] Anthony claimed these odors are "offensive, smelling and even tasting like chemicals or petroleum" and cause "adverse physical effects including headaches; elevated heart rate; cold sweats; nausea; skin, eye, or mouth dryness, and general malaise."[40] Anthony further claimed that she is exposed to these odors on her standard driving routes, and the odors cause her "physical discomfort" and are "characterized by a pungent smell coupled with a petroleum or chemical taste" which sometimes make her feel dizzy and cause skin, eye, and mouth dryness.[41]

Considering the Supreme Court's holding that plaintiffs demonstrate injury-in-fact when they allege that their "reasonable concerns" about the effects of discharges have "directly affected" their recreational, aesthetic, and economic interests,[42] the Court finds that Plaintiffs herein have satisfied their burden of demonstrating injury-in-fact in this case. The Fifth Circuit has also relied on jurisprudence holding that "breathing and smelling polluted air is sufficient to demonstrate injury-in-fact and thus confer standing under the CAA."[43] In *Texans United*, the Fifth Circuit found that the plaintiffs had satisfied the injury-

---

[37] Rec. Doc. No. 43-5, ¶ 5.
[38] *Id.* at ¶ 6.
[39] *Id.* at ¶ 7.
[40] *Id.*
[41] *Id.* at ¶ 10.
[42] *Friends of the Earth, Inc. v. Laidlaw Envtl. Services, Inc.*, 528 U.S. 167, 183–84, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *see also Covington v. Jefferson County*, 358 F.3d 626, 639 (9th Cir. 2004); *Am. Canoe Ass'n v. Murphy Farms, Inc.,* 326 F.3d 505, 518 (4th Cir. 2003).
[43] *Texans United*, 207 F.3d at 792 (citing *NRDC v. EPA*, 507 F.2d 905, 910 (9th Cir. 1974)).
39665

in-fact requirement by stating in affidavits that they suffered repeated exposure to sulfurous odors while in their homes and yards.[44] The Court is satisfied by Plaintiffs' summary judgment evidence of injury-in-fact.

### 2. Fairly Traceable

Again, Defendant contends Plaintiffs will need expert testimony and perhaps air modeling to establish that the alleged harm is fairly traceable to the alleged conduct of Defendant. To meet the fairly traceable requirement for standing, Plaintiffs do not have to present evidence of causation; rather, the Fifth Circuit has held that Plaintiffs may satisfy this requirement by presenting only circumstantial evidence that their injuries are connected to alleged violations by Defendant.[45] The circumstantial evidence submitted by Plaintiffs, as set forth above, is sufficient to satisfy the fairly traceable requirement for standing. Both Garth and Anthony stated that the odors they smelled were coming from the Defendant's facility, with Garth detailing that the flares and loud noises coming from the facility frighten her and cause her to stay inside[46] and Anthony describing how she will take longer driving routes to her destinations to avoid coming in contact with the odors from Defendant's facility.[47]

Moreover, it is not necessary that Plaintiffs establish that Defendant's emissions are the only alleged cause of injury; rather, "it is sufficient for plaintiffs to show that [Defendant's] discharge of chemicals *contributes* to the pollution that causes their

---

[44] *Id.*
[45] *Id.* at 792–93.
[46] *See* n. 32, *supra.*
[47] Rec. Doc. No. 43-5, ¶ 11.

39665

injuries."[48] The "fairly traceable" requirement "is not equivalent to a requirement of tort causation."[49] Thus, Plaintiffs need not show "to a scientific certainty" that the injuries they claim are caused by Defendant's conduct because such tort-like causation is not required by Article III.[50]

Considering the circumstantial evidence presented by Plaintiffs, and the fact that Defendant has already been party to an administrative settlement with the state which acknowledges Defendant's emissions activity in the area in question, the Court finds that the fairly traceable test is met in the present case.

3. Redressability

The Court agrees with Plaintiffs that the requested injunctive and declaratory relief and civil penalties requested in the *Complaint* could redress the types of injuries claimed;[51] however, the Court finds that there are fact issues which preclude summary judgment regarding the Settlement Agreement between Defendant and LDEQ and whether Plaintiffs' claims are precluded, and thus not redressable, as a result. While the Court agrees that a past settlement does not preclude all liability for all future violations not covered by the previous settlement, the Court cannot determine from the current record in this matter if the settlement applies to the alleged violations set forth in this

---

[48] *St. Bernard Citizens for Environmental Quality, Inc. v. Chalmette Refining, L.L.C.*, 354 F.Supp.2d 697, 703 (E.D. La. 2005)(citing *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 558 (5th Cir.1996); *cf. Texans United*, 207 F.3d at 793).
[49] *Public Interest Research Group, Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 72 (3d Cir.1990), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991).
[50] *See id.* at 73 n. 10.
[51] "For a plaintiff who is injured or threatened with injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct and prevents its recurrence provides a form of redress. Civil penalties can fit that description. Insofar as they encourage defendants to discontinue current violations and deter future ones, they afford redress to citizen plaintiffs injured or threatened with injury as a result of ongoing unlawful conduct." *Laidlaw,* 528 U.S. 167, 169.
39665

action.

Defendant contends that redressability is not met where there is a settlement in place between the Defendant and the regulating agency unless the Plaintiffs show that the settlement is inadequate. Defendant relies on the decision of the Sixth Circuit in *Ellis v. Gallatin Steel Co.*,[52] where the court held as follows:

> If it is true that citizens must notify the EPA before commencing an action in the first instance, surely it is true that they must notify the EPA before commencing an action that turns on the alleged inadequacy (or alleged under-enforcement) of a consent decree proposed by and negotiated by that very agency. *See Atlantic States Legal Foundation, Inc. v. United Musical Instruments*, 61 F.3d 473, 478 (6th Cir.1995) ("One of the important purposes of the notice requirement under environmental statutes is to facilitate dispute resolution by EPA negotiation [and thereby] reduce the volume of costly litigation.")(quotation omitted). Generally speaking, when the contours of a private plaintiff's suit and the Government's suit coincide— as the district court determined they did here (and as the Ellises concede)— the former must be dismissed. *See EPA v. City of Green Forest, Arkansas*, 921 F.2d 1394, 1403–04 (8th Cir.1990) (upholding district court decision to dismiss a private plaintiff's Clean Water Act claims that overlapped completely with a Government consent decree); *see also CLEAN*, 2000 WL 220464, at \*17; *Lockett v. EPA*, 319 F.3d 678, 689 (5th Cir. 2003) ("[A]llow[ing] [the citizen] suit to proceed based on continued violations for which the [state agency] had already begun to take action would eviscerate the bar on citizen suits where the state is diligently prosecuting an action under comparable state law.").[53]

Defendant also cites *Texans United*, where the Fifth Circuit found that the plaintiff's claims were redressable despite an administrative settlement because the plaintiffs produced evidence, including an expert report and affidavits from the defendant's former operator, to show that the EPA and local authorities had firmly opposed the settlement, calling its remedies inadequate, and requested further specific actions.[54] To the contrary,

---

[52] 390 F.3d 461 (6th Cir. 2004).
[53] *Id.* at 476.
[54] *Texans United*, 207 F.3d at 793-94.
39665

in the present case, Defendant contends Plaintiffs have produced no evidence that the LDEQ has failed to carry out its enforcement responsibilities or entered into an inadequate settlement, and Plaintiffs have failed to address the settlement or specify how their claimed violations are not covered therein.

Although the Court agrees with Plaintiffs that a settlement does not necessarily absolve an entity for all future violations "in perpetuity,"[55] Plaintiffs have failed to establish by summary judgment evidence that the claimed violations in this lawsuit are not governed by the Settlement Agreement. Further, whether the settlement between Defendant and LDEQ is being "diligently prosecut[ed]"[56] is not clear from the record. The 2013 settlement between Defendant and LDEQ[57] pertains to unauthorized discharges from Defendant's facilities that took place between 2008 and 2012. The Stipulated Penalty Agreement between the parties was written "to remain in effect for three (3) years after the date of entry."[58]

Defendant signed the Settlement Agreement on December 20, 2013; therefore, the regime of penalties and reporting requirements contained therein would have expired on December 20, 2016. The Settlement Agreement did allow for the possibility of being "renewed annually prior to the expiration of the initial term or any annual renewal thereof, if agreed in writing by the parties." It is not clear from the record if the settlement was

---

[55] Rec. Doc. No. 68, p. 5.
[56] 42 U.S.C. § 7604(b)(1)(B).
[57] http://deq.louisiana.gov/assets/docs/General/Settlement_Agreements/2013/ExxonMobil2014_Final.pdf
[58] *Id*, Attachment O, p. 64 of 78.

39665

renewed; thus, it is unclear if the settlement is properly characterized by Plaintiffs as a "past" settlement.[59]

Accordingly, as Plaintiffs have not carried their summary judgment burden of establishing the redressability requirement for standing, the Court must deny the *Motion for Summary Judgment on Standing* as the record currently stands. The Court does, however, believe this issue could be resolved after limited jurisdictional discovery.[60]

## III. CONCLUSION

For the reasons set forth above, *Motion for Summary Judgment on Standing*[61] filed by Plaintiffs, Louisiana Environmental Action Network and Stephanie Anthony, is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on June 23, 2017.

*Shelly D. Dick*
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[59] Plaintiffs cite *KC Equities v. Dep't of Pub. Welfare,* No. 461 C.D. 2013, 2014 WL 1477588, at *10 (Pa. Commw. Ct. Apr. 14, 2014), as applicable precedent. There, the court found that to allow a past settlement to preclude redressability would mean "any party to a settlement would have free reign to commit the same type of violations after the Settlement." This is not a Clean Air Act case but a case involving permit and code violations at a day care. Constitutional standing and redressability were not at issue.

[60] "When subject matter jurisdiction is challenged, a court has authority to resolve factual disputes, and may devise a method to ... mak[e] a determination as to jurisdiction, 'which may include considering affidavits, allowing further discovery, hearing oral testimony, [or] conducting an evidentiary hearing.'" *Turner Bros. Crane & Rigging, L.L.C v. Kingboard Chem. Holding Ltd.*, 2007 WL 2848154, at *2 (M.D.La. Sept.24, 2007) (quoting *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir.1994)).

[61] Rec. Doc. No. 43.

39665