**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

LOUISIANA ENVIRONMENTAL                                      CIVIL ACTION
ACTION NETWORK AND
STEPHANIE ANTHONY

VERSUS                                                                         16-144-SDD-RLB

EXXON MOBIL CORP. d/b/a
EXXONMOBIL CHEMICAL CO.

**RULING**

This matter is before the Court on the *Motion for Summary Judgment on the Unpleaded Affirmative Defense of "Upset"*[1] filed by Plaintiffs, Louisiana Environmental Action Network ("LEAN") and Stephanie Anthony ("Anthony") or ("collectively LEAN"). Defendant Exxon Mobil Corp. d/b/a ExxonMobil Chemical Co. ("Defendant" or "EMC") has filed an *Opposition*[2] to the motion, to which Plaintiffs filed a *Reply*.[3]  For the following reasons, Plaintiffs' motion shall be DENIED.

I.      **BACKGROUND**

The factual background in this matter has been set forth in the Court's previous *Ruling*[4] and will not be repeated here.  In short, LEAN brings this citizens suit under the Clean Air Act (CAA)[5]  LEAN claims that EMC violated the Clean Air Act (CAA) 142 times

---

[1] Rec. Doc. No. 126.
[2] Rec. Doc. No. 134.
[3] Rec. Doc. No. 141.
[4] Rec. Doc. No. 83.
[5] 42 U.S.C. § 7604(a)(1).
49203

by violating operating permits issued by the Louisiana Department of Environmental Quality ("LDEQ") pursuant to Title V of the CAA and Louisiana's Part 70 permitting program.

As one defense to liability, EMC has asserted the affirmative defense of "upset." As a general rule, the Federal Rules of Civil Procedure require a defendant to plead any affirmative defenses it may have.[6]  LEAN argues that EMC waived its affirmative defense of upset by failing to assert the defense in its *Answer* or file an amended answer to include it.[7]  LEAN further contends that EMC explicitly waived the defense in its Reponses to Interrogatory Number 10, wherein EMC stated that the defense of upset was "beyond the scope of permissible discovery."[8]  Thus, LEAN—up to the deadline to compel discovery— was unable to further compel discovery.[9]  LEAN claims that allowing the affirmative defense "would prejudice LEAN, which would have to guess as to what legal theory, witnesses, and documentary evidence [EMC] plans to use to support this defense."[10]  The Parties dispute when LEAN obtained notice of EMC's intent to assert this affirmative defense:  LEAN claims it received notice of the affirmative defense on December 22, 2017; EMC claims LEAN obtained notice no later than December 19, 2016.

Not only does LEAN dispute the timeliness of EMC's assertion of this affirmative defense, but LEAN also challenges the availability of the defense in a federal lawsuit. Specifically, LEAN contends that the affirmative defense in La. Admin. Code Pt. III §

---

[6] *Effect of Failure to Plead an Affirmative Defense*, 5 FED. PRAC. & PROC. CIV. § 1278 (Wright & Miller) (3d ed).
[7] R. Doc. 132, p. 9.
[8] R. Doc. 132, p. 5.
[9] R. Doc. 132, p. 13.
[10] R. Doc. 132, p. 2.
49203

507(J) cannot be used in federal court since it is not part of Louisiana's state implementation plan (SIP).

## II.     LAW AND ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[11]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[12]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[13]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[14]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[15]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a

---

[11] Fed. R. Civ. P. 56(a).
[12] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[13] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[14] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).
[15] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
49203

reasonable jury could return a verdict for the nonmoving party.'"[16]  All reasonable factual inferences are drawn in favor of the nonmoving party.[17]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[18]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint.""'[19]

### B.  Waiver of the Affirmative Defense of Upset

The Federal Rules of Civil Procedure require a party responding to a pleading to "affirmatively state any avoidance or affirmative defense…."[20] Under the Louisiana Administrative Code and the Clean Air Act, the defense of upset is an affirmative defense.[21]  However, EMC did not raise the defense of upset in its initial *Answer*.[22]

Generally, a party's failure to raise affirmative defenses in its answer constitutes a waiver of those defenses.[23]  This addresses the concern that "[a] defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense."[24]

---

[16] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[17] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[18] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[19] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[20] Fed. R. Civ. P. 8(c)(1).
[21] La. Admin. Code Pt. III, § 507(J)(2); 40 C.F.R. § 70.6(g)(2) (the CAA refers to "upset" as "emergency").
[22] R. Doc. 10.
[23] *See Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986) (citing *Starcraft Co. v. C.J. Heck Co.*, 748 F.2d 982, 990 n.11 (5th Cir. 1984)).
[24] *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987) (citing *Bettes v. Stonewall Insurance Co.*, 480 F.2d 92, 94 (5th Cir.1973)).
49203

The primary purpose, then, is to provide fair notice to the opposing party such that they are not unfairly surprised.[25]   However, the technical failure to assert an affirmative defense is not alone dispositive within the Fifth Circuit: "where [an affirmative defense] is raised in the trial court in a manner that does not result in unfair surprise, […] technical failure to comply with Rule 8(c) is not fatal."[26]   Instead, the responding party waives an affirmative defense only if (1) the defendant fails to raise the affirmative defense "at a pragmatically sufficient time," or (2) the plaintiff is "prejudiced in its ability to respond."[27]

There is no set time to determine when asserting an unpleaded affirmative defense is *de facto* raised at a pragmatically sufficient time.   This determination depends on the context of the litigation as a whole.[28]   For example, in *Pasco v. Knoblauch* and *Turner v. Cain*—both cases involving a similar issue of unpleaded affirmative defenses—both the Eastern District of Louisiana and the Fifth Circuit held that raising the defense more than four years after the commencement of litigation does not, by itself, constitute a pragmatically *insufficient* time.[29]   In *Kemp v. CTL Distribution, Inc.*,[30] this Court held that raising an affirmative defense seven years after the litigation's commencement was not a pragmatically sufficient time when the failure to raise the defense earlier had subjected the plaintiff to years of protracted litigation.[31]   In *Kemp*, a great deal of litigation could have

---

[25] Woodfield v. Bowman, 193 F.3d 354, 362 (5th Cir.1999).

[26] *Bull's Corner Restaurant v. Director, Federal Emergency Management Agency*, 759 F.2d 500, 502 (5th Cir.1985), quoting *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir.1983); *see also Dickinson v. Auto Center Mfg. Co.*, 733 F.2d 1092 (5th Cir.1983).

[27] *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855–56 (5th Cir.1983); *see also 2 Moore's Federal Practice* § 8.08[3] (3d ed. 2016).

[28] *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577–78 (5th Cir. 2009) (stating that prejudice must be considered in light of "the overall context of the litigation").

[29] *Id.*; *Turner v. Cain*, CV 12-598-BAJ-EWD, 2018 WL 1547863, at *12 (M.D. La. Feb. 28, 2018).

[30] *Kemp v. CTL Distribution, Inc.*, 2013 WL 2422805, *1 (M.D. La. June 3, 2013).

[31] *Id.*; *see Vanhoy v. United States*, 514 F.3d 447, 450–51 (5th Cir. 2008).

49203

been avoided if the defense had "been timely pled and accepted."[32]  Instead, the plaintiff was subjected to years of unnecessary litigation, and the Court found that this circumstance rendered the failure to raise the defense more than a mere technical failure.[33]  Thus, the amount of time between litigation's commencement and raising the affirmative defense is not alone dispositive.

A plaintiff's ability to mount an effective defense is also not dispositive. In *Kemp*, the Court noted that the plaintiffs had a sufficient amount of time to prepare a defense to the unpleaded affirmative defense such that the plaintiffs "cannot be said to have been prejudiced in their ability to respond."[34]  The Court nonetheless found the defense to be waived because it was not raised at a pragmatically sufficient time, and the plaintiffs were prejudiced by protracted and unnecessary litigation "because of its tardy entrance."[35]

Turning to the present case, LEAN contends it was not given notice of EMC's intent to raise the affirmative defense of upset until December 22, 2017, when it was argued in EMC's *Opposition* to LEAN's *Motion for Summary Judgment on Liability*.[36]  In contrast, EMC claims that LEAN has been on notice of this defense since, at the very latest, December 19, 2016,[37] when EMC responded to LEAN's interrogatories that specifically requested EMC's response to issues of upset.[38]  As noted above, time alone is not dispositive as to the waiver of an affirmative defense.  It is relevant, however, as the issue of prejudice alleged by LEAN is the close of expert discovery in September 2017.  LEAN's

---

[32] *Kemp*, 2013 WL 2422805 at *1.
[33] *Id.* at *2 (M.D. La 2013).
[34] *Id.*
[35] *Id.*
[36] R. Doc. 132, p. 4 ("Exxon raised the upset defense for the first time on December 22, 2017 . . .").
[37] R. Doc. 134, p. 7.
[38] *Id.*
49203

timeframe places the affirmative defense more than 21 months after the commencement of suit while EMC's is under ten months;[39] notably, LEAN's timeframe places notice of the defense subsequent to the close of expert discovery whereas EMC's timeframe assigns notice before the close of discovery.

LEAN argues it would have to guess as to the theory, facts, evidence related to an upset defense; thus, it has not been raised at a pragmatically sufficient time.  Further, LEAN contends the timing is insufficient because it is too late for LEAN to obtain an expert witness on the issue of upset.  Conversely, EMC contends the defense was raised in a pragmatically sufficient time, even accepting LEAN's timeline of notice on December 2017, because LEAN had ample opportunity to respond to the defense, and LEAN did, in fact, file three briefs on the defense.[40]  However, as noted above, "ample opportunity to respond" does not, by itself, resolve the issue; rather, timing must be considered in light of the prejudice imposed.

Addressing LEAN's concern regarding its ability to hire an expert prior to trial, the Court must consider whether LEAN had notice of EMC's intent to use the upset defense prior to the close of expert discovery (September 22, 2017). EMC claims, with good authority, that LEAN was on notice of this defense since 2016.[41] Nonetheless, even accepting LEAN's timeframe, the Court finds that LEAN still had sufficient notice of the defense to adequately prepare for trial.

LEAN's, second set of discovery, Interrogatory number 10 asked:

INTERROGATORY NO. 10: To the extent [EMC] claims that any unauthorized release of air pollutants at the Baton Rouge Chemical Plant

---

[39] R. Doc. 1 (Complaint was filed on 3/3/2016).
[40] R. Doc. 134, p. 8.
[41] *Id.* at p. 5.
49203

was not preventable, please explain why each such release was not preventable.[42]

EMC answered LEAN's second set of discovery on December 19, 2016, responding as follows:

> ANSWER: Objection. ExxonMobil objects to this Interrogatory as overly broad and unduly burdensome because it is not limited in time or scope to the matters or incidents at issue in this lawsuit, as such information is not relevant nor proportional to the needs of the case, and is thus beyond the scope of permissible discovery… [Without waiving these objections] ExxonMobil declines to give a narrative answer to this Interrogatory because it seeks information that is available from ExxonMobil's records, and the burden of deriving the answer is substantially the same for both parties. Instead, see EMC-LEAN000004-000640, EMCLEAN004053-004132, and EMC-LEAN004137-004149. ExxonMobil will produce additional responsive, non-privileged documents upon execution of a confidentiality agreement.[43]

Although EMC objected to the request as overly broad and unduly burdensome, the response refers to a defined and specifically narrow field of documents. LEAN claims this answer is insufficient because EMC allegedly claimed that the upset defense was irrelevant to the case and thus beyond the scope of permissible discovery,[44] and that the answer was ambiguous because the same referenced documents were also used in answers to other interrogatories. Notably, however LEAN does not argue that the specific documents referenced do not hold the answer to the Interrogatory.

While the Court acknowledges that EMC's answer to the interrogatory does not strictly comply with Rule 33(b)(3) by failing to provide a "narrative" in connection with the responsive documents,[45] this technical failure is not fatal because EMC did give LEAN

---

[42] R. Doc. 132.
[43] *See* R. Doc. 132, p. 5, Interrogatory No. 10.
[44] R. Doc. 132, p. 5.
[45] Rule 33(b)(3) requires each interrogatory, to the extent it is not objected to, be answered separately and fully. If EMC is not objecting to the use of upset entirely, then EMC is required to fully answer the portions
49203

notice that the defense would be used, and LEAN had the opportunity to investigate further, as discussed below.

A reasonable reading of LEAN's Interrogatory number 10 asks for suit-related claims of unpreventable discharge. To this, EMC responded that the answer is irrelevant and beyond the scope of permissible discovery. However, the fact that the answer and supporting documents are specifically located in an answer to an interrogatory question about upset should have signaled to LEAN that this defense was contemplated.   The response provided reasonable notice that EMC would pursue an upset defense. Based on this response, LEAN had the opportunity to question Bliss Higgins, EMC's designated employee to testify "regarding compliance with environmental; statutes, regulations, and permits," or EMC's corporate representative, about which releases EMC considers subject to the upset defense.[46]   In any event, LEAN should have known following these responses it might require an expert on this issue.[47]

The Court also finds that LEAN has had ample notice of the defense in advance of trial. In opposition to LEAN's *Motion for Summary Judgment on Liability*, EMC argued the affirmative defense of upset with respect to certain discharges. LEAN was granted

---

of the interrogatory that is not objecting to. It has done so by referring to the documents, though without providing "a narrative." EMC claims that it does not need to provide a narrative because the burden of deriving the answer is substantially the same for both parties. This is true only to an extent. It is arguably true in that each party has the same burden in determining how each discharge was not preventable. R. Doc. 132, p. 5 (the interrogatory asked EMC to explain "why each such release was not preventable").  The only narrative needed by LEAN, however, is an answer of whether EMC will use any upset defenses.[45] Moreover, in interrogatory number 8, LEAN asked EMC to "identify all releases of air pollutants at the Baton Rouge Chemical Plant … that Exxon contends was an 'upset' as defined by La. Admin. Code tit. 33, § 507.J."  R. Doc. 134, p. 2.  To fully answer this question while objecting to the overly broad portions of the interrogatory would have required EMC to, at the very least, list *which* releases EMC considers to be upsets. Nevertheless, the Court does not find this technical failure a foreclosure to the assertion of the defense.
[46] R. Doc. 134, p. 11–12.
[47] EMC further contends LEAN's argument that it was prejudiced by not being able to depose a fact witness on this issue is "unconvincing, as Plaintiffs did not seek to depose *any* witness – fact or expert – on *any* issue."  Rec. Doc. No. 134 at p. 11 (emphasis original).
49203

leave to file a reply, and later a sur-sur-reply on the upset defense.[48]  LEAN was clearly apprised of which incidents EMC considered to be an upset because they are "easily identifiable in the UADs and/or NFAs,"[49] which LEAN "actually received."[50]  Indeed, EMC's *Opposition* stated which specific releases EMC considered to be an upset.[51]

Thus, the Court finds that LEAN has not been prejudiced because it had notice of the use of the upset defense by the documents identified in response to Interrogatory number 10 in December 2016. Considering all of the relevant factors and circumstances surrounding this defense, LEAN's *Motion for Summary Judgment* is DENIED as to its claim that the defense has been waived.

### C.  Availability of Defense in Federal Court under the CAA

Alternatively, LEAN moves for summary judgment arguing that EMC has asserted an upset defense under 33 La. Admin. Code Pt. III, § 507(J), a state law, in this federal action brought pursuant to the CAA, a federal law.[52]  LEAN contends EMC must rely only on federal law in this matter, which provides no legal basis for an affirmative defense of upset.[53]

Congress created the CAA to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare."[54] The CAA authorizes the EPA to establish and promulgate air pollution requirements and limitations as a national

---

[48] R. Doc. 134, p. 8; *see also* R. Doc. 212.
[49] R. Doc. 134, p. 8.
[50] *Id.* at p. 11.
[51] *Id.* at p. 8. Specifically, a section of the Motion was titled "The Affirmative Defense of Upset Applies to Some of the Alleged Violations," and this section lists what specific releases EMC considers an upset. R. Doc. 134, p. 4.
[52] R. Doc. 132, p. 1.
[53] *Id.*
[54] 42 U.S.C. § 7401(b)(1).
49203

ambient air quality standard ("NAAQS").[55]  In turn, states must adopt air quality standards that are at least as protective as the NAAQS requires,[56] and must establish a state implementation plan ("SIP") that conforms to EPA's standards.[57] A state's SIP becomes federally enforceable once the EPA approves it.[58] Thus, EMC may assert any defense in Louisiana's SIP if the EPA has approved the SIP.

Neither party disputes that the EPA approved Louisiana's SIP, and the same view is clear in this Court's jurisprudence.[59]  Nevertheless, LEAN contends that Section 507(J) cannot be used in a federal suit because it is outside the SIP—but rather in Louisiana's state operating permit program—and is thus not federally enforceable.[60] EMC responds that the EPA's approval of a state operating permit renders the state operating permit program federally enforceable in conjunction with the already-enforceable SIP.[61]  The Court finds support for this rationale.

A state's permitting program—or "Title V" program—is not the same as its SIP.  As the name suggests, a state's Title V program stems from Title V of the CAA, which specifies EPA standards for air pollution enforcement. States utilize CAA Title V in developing a state permit program that complies with the EPA's requirements.   In contrast, SIPs are based on Title 1 of the CAA, and state the mechanism by which a state

---

[55] *See* 42 U.S.C. §§ 7408–7409.

[56] *See* 42 U.S.C. § 7407(a).

[57] *See* 42 U.S.C. § 7410(a).

[58] Clean Air Act, §§ 107–110, 42 U.S.C. §§ 7407–7410; *St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Refining, L.L.C.*, 399 F. Supp. 2d. 726, 730 (E.D. La. 2005) (citing *Louisiana Envtl. Action Network v. EPA*, 382 F.3d 575, 579 (5th Cir. 2004); *Kentucky Res. Council, Inc. v. EPA*, 304 F. Supp. 920, 923 (W.D. KY 2004); *Sweat v. Hull*, 200 F. Supp. 2d. 1162, 1164 (D. Ariz. 2001)).

[59] R. Doc. 141, p. 2 ("Louisiana's SIP is federal law…"); R. Doc. 134 pp. 12–13; *Zen-Noh Grain Corp. v. Consolidated Environmental Management, Inc.*, No. 12-1011, 2013 WL 3947186 at * 2 (E.D. La. July 31, 2013)(unreported).

[60] R. Doc. 141, p. 2.

[61] R. Doc. 134, p. 13.

49203

will ensure compliance with the NAAQS established by the EPA. Both require EPA approval.[62]

Title V permits may not alter or modify SIP requirements. Rather, Title V "houses" existing SIP requirements.[63] That is, Title V is broad, and includes, *inter alia*, a state's SIP.[64] Title V required the EPA to create regulations under which states would develop operating permit programs combining all enforceable requirements applicable to a source of air pollutants.[65] Permits issued under SIP-approved permit programs, such as Louisiana's, are also enforceable under the terms and conditions of a state's Title V program.[66] These Title V "terms and conditions" are "applicable requirements" that must be incorporated into title V.[67]  The letter concludes: "Thus, if a State does not want a SIP provision or SIP-approved permit condition to be listed on the Federal side of the title V permit, it must take appropriate steps to delete those conditions from its SIP or SIP-approved permit."

The EPA gave full approval of Louisiana's Title V Operating Permits program on September 12, 1995.[68] 40 C.F.R. § 52.970 "sets forth the applicable [SIP] for Louisiana under section 110 of the Clean Air Act…."[69]  This section, among other things, states that "[m]aterial listed in paragraphs (c), (d), and (e) of this section with an EPA approval date

---

[62] 42 U.S.C. Ch. 85, Subchapter 1.
[63] *See, e.g.*, memorandum from John S. Seitz, Director, Office of Air Quality and Planning Standards, EPA, re Federal Enforceability of Terms and Conditions in Preconstruction Permits, (Mar. 31, 1999), at 1–2.
[64]  Title V includes, *inter alia*, national emission standards for hazardous air pollutants, new source performance standards, as well as applicable SIP requirements.
[65] *See* 42 U.S.C. §§ 7661–7661(f).
[66] *See* 40 C.F.R. 52.23.
[67] *See* CAA § 504(a); 40 C.F.R. 70.20.
[68] 40 C.F.R. § 52.970. *See also* Clean Air Act Final Full Approval of Operating Permits Program; Louisiana Department of Environmental Quality, Final Full Approval, 60 Fed. Reg. 47296 (Sept. 12, 1995).
[69] 40 C.F.R. § 52.970(a).
49203

prior to July 1, 1998, was approved for incorporation by reference ….”[70] Louisiana's Section 507 is included in paragraph (c), and within the timeframe, and is therefore incorporated by reference into the SIP and subject to federal enforcement.

Section 507(J) of Louisiana's Title V program is federally enforceable.[71]  40 C.F.R. 52.23 makes any EPA-approved program that is incorporated into a SIP "subject to enforcement action under … the CAA."[72]  As noted above, the EPA incorporated Section 507(J). This incorporation makes Section 507(J) federally enforceable according to 40 C.F.R. 52.23.  The distinction of the regulation's enforcement language should not bar its applicability in an affirmative defense context because an enforcement action of a Title V permit is a condition precedent to the use of an affirmative defense.  If a plaintiff may rely on federally incorporated provisions of Title V to bring a federal suit, it reasonably follows that a defendant may also rely on Title V to defend that suit.  Further, whether a plaintiff actually relies on incorporated provisions of Title V is not the issue.  If the right is available to a plaintiff, it should also be available to a defendant, and a defendant's reliance on such regulations should not be conditioned upon a plaintiff's.

---

[70] 40 C.F.R. § 52.970(b)(1).

[71] 40 C.F.R. 52.23: Failure to comply with any provisions of this part, or with any approved regulatory provision of a State implementation plan, or with any permit condition or permit denial issued pursuant to approved or promulgated regulations for the review of new or modified stationary or indirect sources, or with any permit limitation or condition contained within an operating permit issued under an EPA-approved program that is incorporated into the State implementation plan, shall render the person or governmental entity so failing to comply in violation of a requirement of an applicable implementation plan and subject to enforcement action under section 113 of the Clean Air Act. With regard to compliance schedules, a person or Governmental entity will be considered to have failed to comply with the requirements of this part if it fails to timely submit any required compliance schedule, if the compliance schedule when submitted does not contain each of the elements it is required to contain, or if the person or Governmental entity fails to comply with such schedule.

[72] 40 C.F.R. 52.23.

49203

Although Section 52.23 allows enforcement pursuant to Section 113 of the CAA, EPA guidance suggests that being "federally enforceable" includes federal government enforcement under Sections 113 and 167 and citizen enforcement under Section 304 of the CAA.[73]  This view is strengthened by the showing that the citizen suit provides a mechanism to bring an action against "any person" for violations of any "emission standard or limitation under this chapter."[74]  "This chapter" is later defined in the section to include emission limitations, "any" condition or requirement of a permit under parts C and D of subchapter III, Sections 7419, 7491, 7411, and 7412 of the CAA.[75]  It also allows suit for violation of "any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations."[76]  Section 113 similarly allows suit, albeit for the Administrator, when "any person has violated … any requirement or prohibition of an applicable implementation plan or permit…."[77]  At least to the extent that Title V permits are concerned, the EPA and citizens share the ability to sue, and both have very broad capacities to bring suit.  Accordingly, the Court finds that the term "federally enforceable" must mean the same thing in context of an action alleging a Title V violation by either the EPA or through a citizen suit.

---

[73] *See* memorandum from John S. Seitz, Director, Office of Air Quality and Planning Standards, EPA, re Interface Issues Between Title V and Title I of the CAA, (May 20, 1999), at 4 (clarifying interpretation of "federally enforceable," in context of 40 C.F.R. 52.23, to include citizen suit provisions under Section 304 in addition to 113.). To be clear, this responsive letter addressed *EPA*'s ability to enforce, which fits squarely within Section 113. Nonetheless, the Director deliberately discussed the use of citizen suits.
[74] Section 304(a)(1).
[75] Section 304(f).
[76] Section 304(f)(4).
[77] Section 113(a)(1). Among the remedies available to the Administrator include civil action. *See id.* at (C). 49203

Even without such an interpretation, the Court finds that Section 507(J) is federally enforceable in its own right. The citizen suit provision allows any citizen to bring an action for any violation of any EPA-approved SIP, *any permit term or condition*, and any requirement to obtain a permit as a condition of operations.[78]  Clearly, LEAN may bring suit for violation of any permit term or condition—even if distinguished from the SIP.  EMC must also be allowed to use the same sources of law to defend a suit as LEAN used to commence the suit.  Again, in the Court's view, no distinction should be made between LEAN's use of the law and EMC's ability to use the same law. Because LEAN has the ability to bring suit for violation of a permit term or condition, EMC should likewise be able to defend itself on the basis of those same terms or conditions.

Section 507(J) is a part of Louisiana's Title V program, which has been approved by the EPA.[79]  It is as much of a "term" to a permit as a maximum emissions standard is a "condition" to the same. The latter is a "condition" to the permit because the permit is issued on condition that the permit-holder will not exceed the established standard. But permits are not unilateral obligations. A source may not accept a permit if its conditions are too stringent with which to comply. Thus, the "upset" defense under Section 507(J) is a condition that likely induced EMC here, and other CAA-regulated entities all around.  It is a condition, then, in the same way as above: the permit is sought and accepted on condition that 507(J) allows a defense to noncompliance for certain "sudden and reasonably unforeseeable events beyond the control of the owner or operator, including

---

[78] Section 304(f)(4) (emphasis added).
[79] 40 C.F.R. § 52.970. *See also* Clean Air Act Final Full Approval of Operating Permits Program; Louisiana Department of Environmental Quality, Final Full Approval, 60 Fed. Reg. 47296 (Sept. 12, 1995). 49203

acts of God…."[80]  Indeed, obligations are not unilateral.  Much of the CAA's language focuses on enforcement, which is the purpose of the CAA. Nevertheless, it should not be read to overlook the nature of administrative law and its cost-benefit analytical model.

The EPA more recently proposed disapproval of Louisiana's SIP revision to a different section of Louisiana's Admin. Code.[81] The proposed disapproval was based on the section's reference to "upset" in Section 507(J). The EPA found that, while "upset" is in Louisiana's Title V program, its definition is identical to that of "emergency" in 40 C.F.R. 70.6, which the EPA had commenced rulemaking to remove. "If finalized, that rulemaking would require the LDEQ to also remove the affirmative defense language from its Title V rules, including the language at [Section 507(J)] which is part of Louisiana's approved Title V program."[82] The EPA, however, did not issue such a final rule but rather withdrew the rulemaking in February of 2018.[83]  A brief discussion of the rulemaking is set forth below.

The CAA provides two identical provisions for claiming an upset defense: 40 C.F.R. 71.6(g), which applies to EPA-issued permits, and 40 C.F.R. 70.6(g), which applies to state permits.[84]  Part 70.6(g) establishes an EPA-approved minimum standard that states may adopt in their SIP. As noted above, a SIP becomes federally enforceable—and thus enforceable in this Court—*only* after the EPA approves it.[85]

---

[80] 33 La. Admin. Code Pt. III, § 507(J)(1).
[81]     https://www.federalregister.gov/documents/2016/11/22/2016-28003/approval-and-promulgation-of-implementation-plans-louisiana-revisions-to-the-new-source-review-state.
[82]     https://www.federalregister.gov/documents/2016/11/22/2016-28003/approval-and-promulgation-of-implementation-plans-louisiana-revisions-to-the-new-source-review-state.
[83] The proposed rule was withdrawn on February 23, 2018. https://www.regulations.gov/docket?D=EPA-HQ-OAR-2016-0186. Plaintiff's Memorandum is signed July 2, 2018.
[84] *Compare*, 40 C.F.R. 71.6(g) *with* 40 C.F.R. 70.6(g).
[85] Clean Air Act, §§ 107–110, 42 U.S.C. §§ 7407–7410.
49203

In 2016, the EPA commenced rulemaking to remove both Parts 70.6(g) and 71.6(g).[86] The EPA maintains that this rulemaking is consistent with the EPA's current interpretation of the CAA's enforcement structure and recent decisions from the D.C. Circuit.[87]   In short, the EPA amendments promulgated during the 1990s established, among other things, a standard for upset defenses which, in *NRDC v. EPA*, the D.C. Circuit found to exceed the EPA's authority.[88] Although *NRDC v. EPA* did not involve Part 70.6(g),[89] the EPA has determined that the D.C. Circuit's reasoning in *NRDC* would dictate a similar result in such a suit.[90]   The EPA released a supporting document listing state regulations and statutes that may be affected by the proposed rule, and Louisiana's Section 507(J) is listed.[91]   LEAN contends this proposed rule makes Part 70.6 an invalid basis for an upset defense.[92]   However, a proposed rule lacks the authority of law.   EMC argues that the "Court's role is not to rule based on regulations that an agency *may* finalize in the future."[93]   The Court agrees.   Moreover, this proposed rule was withdrawn by the EPA prior to LEAN submitting this argument to this Court.[94]   Finding that Section 70.6(g) affirmative defenses are not categorically precluded by the EPA, Section 507(J) remains unaltered until any final actions dictate otherwise. That is, Section 507(J) remains a valid

---

[86] Removal of Title V Emergency Affirmative Defense Provisions, Proposed Rule, 81 F.R. 38645, 38647 (June 14, 2016).
[87] 81 F.R. 38647.
[88] 749 F.3d 1055 (D.C. Cir. 2014).
[89] *NRDC* involved an affirmative defense in the National Emission Standards for Hazardous Air Pollutants, located in section 112 of the CAA.
[90] "The EPA concluded that the logic of the court in *NRDC v. EPA* extends beyond CAA section 112 to affirmative defense provisions contained in SIPs." 81 F.R. 38648.
[91] Docket No. EPA-HQ-OAR-2016-0186 at 3.
[92] R. Doc. 132, p. 21.
[93] R. Doc. 134, p. 14 (emphasis original).
[94] The proposed rule was withdrawn on February 23, 2018. https://www.regulations.gov/docket?D=EPA-HQ-OAR-2016-0186. Plaintiff's Memorandum is signed July 2, 2018.
49203

part of Louisiana's Title V program and continues to have the EPA's approval. Accordingly, LEAN is not entitled to summary judgment on the availability of upset as an affirmative defense.

### D.  Alternative Relief Requested

LEAN argues in the alternative that the Court should limit EMC's use of upset in this proceeding to what the CAA allows, which would only allow defense as to penalties— not liability, declaratory judgment, or injunctive relief. Further, LEAN asks the Court to limit EMC's use of upset "to the documents it identified as its proposed evidence for an upset defense."[95]

As to the first issue, there is no legal authority that supports this position. If EMC rightfully asserts an affirmative defense as allowed by Louisiana's Title V program, it is not limited in asserting that defense.   LEAN relies on the Fifth Circuit's decision in *Luminant Generation Co. LLC v. U.S. E.P.A.*, wherein the court noted that any defense based on 40 C.F.R. 70.6(g) is a defense to penalties only. [96]  EMC points out that its upset defense is not based on 40 C.F.R. 70.6(g) but on Louisiana's Section 507(J); thus, the *Luminant* decision is inapplicable here.  The Court agrees for the reasoning and analysis set forth in detail above.

As to LEAN's request to limit EMC's use of documents, the Court simply holds that it will enforce the Federal Rules of Civil Procedure and the discovery rules set forth therein.  Documents that have not been exchanged in discovery will not be permitted at trial by any Party unless such documents constitute impeachment or rebuttal evidence.

---

[95] R. Doc 132, p. 3.
[96] 713 F.3d 841 (5th Cir. 2013).
49203

To the extent LEAN complains that the upset evidence submitted by EMC in response to LEAN's present summary judgment motion is insufficient to establish the defense as a matter of law, this argument is without merit.  LEAN did not move for summary judgment on the substantive merits of EMC's upset defense to the corresponding discharges. Rather, LEAN's motion seeks summary judgment on only two issues:  waiver of the defense and the viability of the defense under the CAA.  The substantive merits of the defense were not raised in LEAN's motion, and EMC is not limited at trial to the evidence submitted on the current motion as long as the evidence used at trial has been exchanged pursuant to the Federal Rules of Civil Procedure and the discovery orders of this Court.

## III.    CONCLUSION

For the reasons set forth above, LEAN's *Motion for Summary Judgment on the Unpleaded Affirmative Defense of "Upset"*[97] is DENIED.

Signed in Baton Rouge, Louisiana on <u>December 17, 2018</u>.


_____

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[97] Rec. Doc. No. 126.

49203